UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SHANE DOUGLAS BELL,<br><br>           Plaintiff,<br><br>vs.<br><br>DARIN YOUNG, WARDEN, INDIVIDUAL AND OFFICIAL CAPACITY; JENNIFER DREISKE, DEPUTY WARDEN, INDIVIDUAL AND OFFICIAL CAPACITY; SETH HUGHES, UNIT COORDINATOR, INDIVIDUAL AND OFFICIAL CAPACITY; DENNIS KAEMINGK, SECRETARY OF CORRECTIONS, INDIVIDUAL AND OFFICIAL CAPACITY; BOB DOOLEY, DIRECTOR OF PRISON OPERATIONS, INDIVIDUAL AND OFFICIAL CAPACITY; CRAIG MOUSEL, CORRECTIONAL OFFICER, INDIVIDUAL AND OFFICIAL CAPACITY; AND SCO MOISAN, SENIOR CORRECTIONAL OFFICER, INDIVIDUAL AND OFFICIAL CAPACITY;<br><br>           Defendants. | 4:16-CV-04046-VLD<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF SHANE BELL'S MOTION TO ENFORCE SETTLEMENT AGREEMENT<br><br>Docket No. 143 |

**INTRODUCTION**

This matter was before the court on plaintiff Shane Bell's *pro se* complaint pursuant to 42 U.S.C. § 1983. See Docket No. 1. On February 17, 2017, the district court, the Honorable Lawrence L. Piersol, appointed counsel to represent Mr. Bell in this matter. See Docket No. 83. An amended complaint was thereafter filed by counsel on Mr. Bell's behalf. See Docket No.

89. In December, 2017, the case was transferred to this magistrate judge on the consent of all parties. See Docket Nos. 101 & 102. While a motion for summary judgment was pending, the parties settled all claims in this matter and moved to dismiss the case with prejudice. See Docket No. 140. The court accordingly granted the motion, dismissed the matter with prejudice, and entered judgment. See Docket No. 141.

Mr. Bell, now acting *pro se* once again, has filed a motion seeking an order enforcing the settlement agreement. See Docket No. 143. Defendants resist the motion, asserting they are not in violation of the terms of the agreement. See Docket No. 144. Mr. Bell's motion raises two issues: (1) have defendants paid all sums of money required under the agreement regarding filing fees, and (2) are defendants violating the provision in the settlement agreement under which they and their agents have promised not to retaliate against Mr. Bell?

## DISCUSSION

**A.     South Dakota Contract Law**

Settlement agreements are contracts. As such, they are governed by contract law. Lewis v. Benjamin Moore & Co., 574 N.W.2d 887, 889 (S.D. 1998). There is no separate federal contract law which would apply under these circumstances in this case to this agreement. Instead, interpretation of the settlement agreement is governed by South Dakota state law as the agreement was negotiated exclusively in South Dakota by residents of this

state. SDCL § 53-1-4; Great West Cas. Co. v. Hovaldt, 603 N.W.2d 198, 201 (S.D. 1999).

The interpretation of a contract is a question of law for the court to determine. Lillibridge v. Meade School Dist. #46-1, 746 N.W.2d 428, 431 (S.D. 2008). When interpreting a contract, "effect will be given to the plain meaning of its words." In re Dissolution of Midnight Star, 724 N.W.2d 334, 337 (S.D. 2006). Courts must "give effect to the language of the entire contract and particular words and phrases are not interpreted in isolation." Id. (internal citation omitted). When provisions of a contract conflict, the more specific provision controls the more general provision. Spiska Eng'g, Inc. v. SPM Thermo-Shield, Inc., 730 N.W.2d 638, 645 (S.D. 2007). Courts look "to the language that the parties used in the contract to determine their intention." Pauley v. Simonson, 720 N.W.2d 665, 667-68 (S.D. 2006).

If the language of the contract is clear and unambiguous, "it is the duty of [the] Court to declare and enforce it." Pauley, 720 N.W.2d at 668 (S.D. 2006). However, if the contract is ambiguous, then "parol and extrinsic evidence may be utilized 'to show what [the parties] meant by what they said . . .'" Id. (quoting Jensen v. Pure Plant Food Internatl., Ltd., 274 N.W.2d 261, 264 (S.D. 1979)). A contract "is ambiguous when it is fairly susceptible to two constructions." Fall River Co. v. South Dakota Public Assur. Alliance, 623 N.W.2d 735, 737 (S.D. 2001). If a contract is ambiguous, it is construed against the scrivener of the contract—the party who drafted the contract. Ass Kickin Ranch, LLC, 822 N.W.2d at 727 (S.D. 2012); Pete Lien & Sons, Inc. v.

3

First American Title Ins., Co., 478 N.W.2d 824, 827 (S.D. 1991). This is because the "language employed is that of the [scrivener] and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it." Mut. Life Ins. v. Hurni Packing Co., 263 U.S. 167, 174 (1923). The scrivener rule of construction applies even when the non-drafting party had the benefit of counsel's review of the document. Pesicka v. Pesicka, 618 N.W.2d 725, 727 n.2 (S.D. 2000); Clements v. Gabriel, 472 N.W.2d 480, 483 (S.D. 1991). It also applies when a form contract is supplied by one party. Hicks v. Brookings Mall, Inc., 353 N.W.2d 54, 56 (S.D. 1984).

However, the court may not seek out a "strained or unusual meaning for the benefit of the" other party. Chord v. Reynolds, 587 N.W.2d 729, 732 (S.D. 1999). Where there is no ambiguity, a contract is construed according to the plain and ordinary meaning of its words. Pete Lien & Sons, Inc., 478 N.W.2d at 827.

**B.     How Much Were Defendants Required to Pay for Filing Fees?**

The settlement agreement between the parties contained the following provision regarding defendants' promise to pay federal court filing fees on behalf of Mr. Bell:

> Plaintiff will be reimbursed for the filing fees incurred in this matter in the amount of $350. A check in said amount will be made payable to the United States District Court and mailed to the Clerk of Courts to be applied to the outstanding balance that Inmate Bell currently owes to the Court as a result of the filing fees incurred in connection with the present case, CIV. #16-4046, as well as Bell v. Voight, CIV. #14-4111 once the District Court, in

4

> accordance with Subparagraph 3(e) of this Agreement, has entered a Judgment of Dismissal in this Action.

See Docket No. 140-1 at p. 2, ¶3b.

Mr. Bell asserts the above provision required defendants to pay the remaining balance on his filing fee in this case as well as the entire remaining balance owed on his 2014 case. Defendants assert the provision obligated them to pay only the sum of $350 (the normal court filing fee), but because Mr. Bell had already partially paid the filing fee in this case, the settlement agreement specified that any leftover amount was to be applied to Mr. Bell's 2014 case. The court agrees with defendants' interpretation as it is borne out by the plain language of the contract.

In settlement contracts, any money to be paid is usually stated with the utmost specificity. Here, the contract clearly and unambiguously states that, "Plaintiff will be reimbursed for the filing fees incurred *in this matter* in the amount of *$350.* A check in *said amount* will be made payable to the United States District Court . . ." See Docket No. 140-1 at p. 2, ¶3b (emphasis added). If Mr. Bell's interpretation of the contract were correct, this language would have stated defendants would pay Mr. Bell the sum of *$448.68*, which is the sum of the balances remaining in both this case and Mr. Bell's 2014 case at the time of settlement. See Note 1, *infra.*

The next portion of paragraph 3b addresses *how* that $350 is to be apportioned by the Clerk of the District Court upon receipt of defendants' check. Some explanation of the Prison Litigation Reform Act ("PLRA") is necessary here. The PLRA, which governs lawsuits like the present one filed by

5

Mr. Bell, allows indigent prisoners to file lawsuits under § 1983 without *prepaying* the $350 filing fee, which prepayment the court would ordinarily require before accepting a complaint for filing. See 28 U.S.C. §§ 1914(a), 1915(a). However, such prisoners *are* required to pay the filing fee eventually. Id. When prisoners file § 1983 complaints, they are required to file with the court information about their prison finances, and then the court orders the prisoners' custodians to remit to the court 20 percent of the funds on deposit in the prisoners' accounts at regular intervals until the court's filing fee is completely paid. See 28 U.S.C. § 1915(b).

Mr. Bell had filed this lawsuit on April 5, 2016. See Docket No. 1. He settled his claims with defendants January 25, 2019. See Docket No. 140-1. At the time of settlement, Mr. Bell had paid $16.94 toward the filing fee in this case.

The defendants agreed to pay Mr. Bell $350. This was the total amount of the filing fee in this case. See 28 U.S.C. § 1914. Also, the filing fee is a cost customarily awarded to a prevailing party in a lawsuit. See 28 U.S.C. § 1920(1). This buttresses defendants' interpretation of the contract that they were required to pay Mr. Bell $350 only—the ordinary filing fee in a civil case in federal court.

However, due to the operation of the PLRA, Mr. Bell had already paid $16.94 of the filing fee in this 2016 case. Mr. Bell still owed (and still owes) a

balance on his filing fee and appellate filing fee ($350 and $505 respectively) in an earlier case he filed under the PRLA, Civ. No. 14-4111.[1]  Rather than pay Mr. Bell the excess $16.94 in cash, the settlement agreement provided that the excess funds out of the defendants' $350 check which were not needed to pay off the balance of the filing fee in this case would be applied toward Mr. Bell's filing fee in his 2014 case.  See Docket No. 140-1 at p.2, ¶3b.

That is exactly what happened post-settlement.  Defendants remitted a check in the amount of $350 to the clerk's office and the amount was split between this case ($333.06) and Mr. Bell's 2014 case ($16.94).  See Docket No. 144-1 & 144-2.  There has been no breach of the settlement agreement by defendants with regard to payment of Mr. Bell's filing fee under paragraph 3b of the contract.

## C. Whether Defendants Have Retaliated in Violation of the Contract?

The parties' settlement agreement contained the following provision:

> Retaliation.  The SDDOC [South Dakota Department of Corrections] agrees and acknowledges that, after the dismissal of the present lawsuit, based on this Settlement Agreement and Mutual Release, it will continue to adhere to its long-standing practice or policy of not subjecting any inmate to retaliation as a result of his/her having filed a lawsuit against the State.  Plaintiff, therefore, will not be subject to retaliation, or other unlawful adverse effect, arising from or relating to his participation in this lawsuit, including but not limited to statements he made or positions he advocated in its prosecution.

See Docket No. 140-1 at p.2, ¶3c.

---

[1] Mr. Bell's balance in the 2014 case, after applying the defendants' $16.94 payment, was $96.68 as of September 23, 2019.

7

Mr. Bell alleges defendants have violated this provision. He asserts that prison employees repeatedly have discussed within his hearing a plan to have Mr. Bell moved to "A floor," a location within the prison used for prisoners who are being disciplined. Furthermore, Mr. Bell alleges these same employees call him names like "rat," "lawyer rat," "Buddha rat," and others. He also asserts these prison employees give other prisoners information about Mr. Bell.

Defendants do not deny these allegations. Rather, they argue that mere name calling and open discussion of plans, without any actual action being taken, is not actionable as "retaliation" under the law. In so arguing, defendants focus on the narrow legal definition of what constitutes a retaliatory cause of action under § 1983.

But the settlement agreement is not limited to a narrow legal definition of "retaliation." Instead, defendants promised under the terms of the settlement agreement to refrain from any "unlawful adverse effect" visited upon Mr. Bell by prison officials as a result of his filing the instant lawsuit. See Docket No. 140-1 at p.2, ¶3c. This is far broader than the narrow legal concept of "retaliation." Because defendants do not deny that this behavior is taking place, the court accepts as true Mr. Bell's allegations, supported by his affidavit. See Docket No. 147. Those allegations support an inference of acts by defendants and their employees that are designed to harass, worry, and endanger Mr. Bell's safety among his fellow prisoners. This may very well constitute "unlawful adverse effects." At the very least, these actions are not within the spirit of paragraph 3c of the parties' agreement.

## CONCLUSION

Based on the foregoing law, facts, and analysis, it is hereby

ORDERED that Mr. Bell's motion to enforce the settlement agreement [Docket No. 143] is granted in part and denied in part. Mr. Bell's motion concerning payment of filing fees is denied. As to Mr. Bell's motion concerning retaliation, it is further

ORDERED that defendants shall reprint paragraph 3c from the settlement agreement and distribute to all prison employees who have contact with Mr. Bell. Each such employee must sign an acknowledgement that they have read and understood the provision as regards Mr. Bell. All other remedies sought by Mr. Bell are denied at this time. It is further

ORDERED that defendants shall preserve any audio recordings of radio traffic concerning Mr. Bell or cell "B-71" from the date of the settlement agreement (January 25, 2019) to the end of this calendar year (December 31, 2019). Defendants shall preserve such evidence for a period of three years from the date of this order. Finally, it is

ORDERED that the department at the South Dakota State Penitentiary which handles garnishment of prisoners' accounts for payment of filing fees to this court should be provided with a copy of this order concerning Mr. Bell's responsibility for the $98.68 balance remaining on his 2014 civil case filing fee.

DATED this 31st day of October, 2019.

BY THE COURT:

*Veronica L. Duffy*
VERONICA L. DUFFY
United States Magistrate Judge